UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| Levara Speight, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. Act. No. _____ |
| ) | |
| COSTCO WHOLESALE ) | COMPLAINT |
| CORPORATION, d/b/a Costco, ) | INJUCITVE RELIEF |
| 825 Cabella Drive, Augusta, GA., ) | DAMAGES |
| ) | JURY TRIAL DEMANDED |
| Defendant. ) | |
| _____) | |

COMPLAINT

COMES NOW, Plaintiff, who shows the Court the following:

INTRODUCTION

Plaintiff, an African-American woman, files this Title VII action asserting claims of discrimination based on race, hostile environment and association, and retaliation against her employer, Costco Wholesale, d/b/a Costco, 825 Cabela Drive, Augusta, GA 30909 (hereafter Costco or Defendant).  Defendant discriminated and retaliated against Plaintiff on account of race and her right to associate with persons of any race without suffering adverse treatment in the terms and conditions of her employment violating Title VII and causing Plaintiff injuries, past, present and future, for which Title VII and 42 U.S.C. § 1981 provide recompense. The actions and inactions of the Defendant were in violation of the Civil Rights Act of 1964 ("Title VII"), causing Plaintiff damages actionable under Title VII and the Civil Rights Act of 1991, 42 U.S.C. § 1991a, and 42 U.S.C. § 1981.

1

JURISDICTION AND VENUE

1.     This is an action under Title VII, 42 U.S.C. § 2000e, et seq., arising under the laws of the United States and Georgia, and this Court has subject matter and personal jurisdiction because the Defendant has 15 or more employees, engages in interstate commerce, and is in Richmond County.

2.     This action also seeks relief under 42 U.S.C. § 1981.

3.     Because this is an action under Title VII this Court has subject matter jurisdiction under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331 & 1343 (a)(3).

4.     This Court has supplemental jurisdiction over any state claims under 28 U.S.C. § 1367, if filed.

5.     Defendant Costco Wholesale does business at 825 Cabella Drive, Augusta, GA 30909.

6.     According to the Georgia Secretary of State Corporate website, at the time of filing, the registered agent for Defendant Costco was: CT Corporation System, 1201 Peachtree Street, NE, Fulton, Atlanta, GA, 30361.

7.     Venue is governed by 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391 ("determined without regard to whether the action is local or transitory in nature"), and venue is appropriate in this district and division.

8.     Plaintiff has complied with all prerequisites to file this action.

9.     Plaintiff was demoted to cashier on May 2016 and she filed a charge of discrimination against Defendant Costco with the Equal Employment Opportunity Commission (EEOC) on or about May 25, 2016.

10.     Plaintiff's charge of discrimination against Costco was received by the EEOC and assigned charge number 11B-2016-00050.

11.     On about September 8, 2016, the EEOC issued a Dismissal and Notice of Right to Sue, as against Defendant Costco.

12.     This action is filed November 5, 2016, which is within ninety days of September 8, 2016.

## PARTIES

13.     Plaintiff Levara Speight, **is** an employee of Costco, and is an African American woman who is married to a White man.

14.     COSTCO WHOLESALE CORPORATION, d/b/a Costco, 825 Cabella Drive, Augusta, GA 30909, hereafter "Defendant" or "Costco" was Plaintiff's employer, that had 15 or more employees, engaged in interstate commerce, and did sufficient business to be covered by Title VII, and subject to prohibitions against race discrimination and retaliation.

## FACTS

15.     Plaintiff began employment with Costco June 2015.

16.     Plaintiff was a certified pharmacy tech who worked in the pharmacy at the Costco in Augusta, Georgia.

17.     The supervisor of the pharmacy was an African-American woman.

18.     One of plaintiff's coworkers was an African-American woman.

19.     From May 2015 until about December 2015 Plaintiff worked amicably with the supervisor and coworker.

20.     Plaintiff was attending college part time to become a nurse, and the supervisor would accommodate Plaintiff's school schedule by changing the times that Plaintiff had to be at work including to allow Plaintiff sufficient travel time.

21. The supervisor similarly accommodated other employees for matters deriving from their personal lives.

22. During this period there were no comments by the supervisor, or African American coworkers, about Plaintiff acting or being like a person of one race or another.

23. On about December 30-31, 2015 Plaintiff's husband met her at work.

24. Plaintiff's husband's race is White or Caucasian.

25. Plaintiff's husband's race appears to be White or Caucasian.

26. In the presence of the supervisor and coworker, Plaintiff and her husband shared conversation and interacted.

27. Apparently, the supervisor and co-worker were observing this interaction between Plaintiff and her husband.

28. After the African American co-worker, and Plaintiff's supervisor, who is African American, saw Plaintiff interact with and associate with her husband, who is White, the supervisor and co-worker, began to harass Plaintiff on account of race and the freedom to associate without regard to race resulting in adverse treatment in the terms and conditions of employment.

29. After seeing Plaintiff interact with her husband Plaintiff's supervisor told her, "You acted like a sixteen-year-old white girl."

30. In January 2016, the supervisor refused to accommodate Plaintiff's work schedule so that she could continue to get her education.

31. On another occasion Plaintiff's supervisor told her, "You like white people music. Billy Joel is white people's music."

32. Plaintiff's supervisor told her, "You're not Black."

33. Similar comments were made of a racial nature during January-March 1, 2016.

34. Then in about January 2016 the supervisor issued an Employee Performance Log which was adverse treatment and the supervisor again refused to accommodate Plaintiff's schedule, as she had done before and would do for others.

35. In about February 2016, Plaintiff complained to Waymon Bell, the store manager, and for a brief period of a couple of weeks the comments stopped, and there was some accommodation again by the supervisor.

36. When Mr. Bell went on a vacation, Plaintiff's supervisor changed the accommodations that had been put in place by the involvement of Bell and the comments started again.

37. On March 1, 2016, the supervisor threatened to remove Plaintiff from the pharmacy department with a decrease in pay and make her chose between family and job.

38. The supervisor said it would not be a lateral move and therefore Plaintiff would lose pay, which was false, which Plaintiff only learned later.

39. On March 1, 2016, Plaintiff was so stressed by the harassment and circumstances that she was instructed to take a medical leave of absence.

40. On March 1, Plaintiff was so stressed that she had to have a friend call the pharmacy and the friend spoke to the supervisor to inform her that Plaintiff had a medical condition and could not be at work.

41. The supervisor told the Plaintiff's friend that Plaintiff knew better, that Plaintiff had to call in, that she had to call in ahead of schedule, that she wanted to know what Plaintiff's condition was, and that no one was to call in for her.

42. While Plaintiff was out on medical leave and had to get medication from the Costco pharmacy the supervisor made it difficult.

43.

44.  While out on leave, Plaintiff was called by the Front Manager, Chris, and told Plaintiff she was going to be a cashier and that she now reported to him.

45.  Plaintiff was made to believe she had no choice but to sign the Change in Position form.

46.  Plaintiff complained to Brandon, an assistant manager.

47.  When Plaintiff was working as a cashier the supervisor came from the pharmacy to the front and announced loudly that Plaintiff had been removed from the pharmacy, and that was why she had to be up front as a cashier.

48.  It is foreseeable to management of Defendant Costco that a substantial number of persons assigned to work as cashier's will injure their backs.

49.  Because Costco sells in bulk, the assignment of the cashier includes lifting heavy objects off and out of the carts used by the customers.

50.  Some of the items are on the bottom rack of a cart, which places stress on the back to put the item on and take the item off, to scan it.

51.  When items are in the cart basket, the cashier must lean over the side of the basket, stressing the back to lift the heavy objects.

52.  In June 2016, while Plaintiff was working as a cashier, she injured her back when she had a customer who had stacked two cases of glass bottled Pellegrino, two cases of water, and two cases of coke on the bottom.

53.  Plaintiff had to lift four cases of liquid twice, and she injured her back.

54.  She reported the injury which is part of a Worker's Compensation claim.

55.  The seriousness and type of her injuries will impact her career choices and she cannot be a nurse, given lifting requirements.

56.  Plaintiff was in nursing school, but because of the injuries to her back, cannot be a nurse.

57. The injuries have caused her a substantial amount of physical pain, that is directly and proximately caused by the challenged discriminatory assignment.

58. As a result of the discrimination that resulted in assigning her to the position of cashier, she had to change careers, and will suffer a loss of earnings.

59. The actions of Defendant were in willful and wanton disregard of the rights of all to be free from race discrimination and retaliation.

## LEGAL CLAIMS

### Claim I

60. Plaintiff incorporates each and every paragraph above as if stated herein.

61. Defendant imposed terms and conditions of employment that were more harsh for Plaintiff because of, or on account of race, including the right to associate with others without regard to race.

62. After the supervisor learned of the race of Plaintiff's husband, and how Plaintiff interacted with her husband, who is White, she harassed Plaintiff based on race and denied her scheduling accommodations that had been granted before and that had been granted to others.

63. The supervisor wrote Plaintiff up on pretextual grounds.

64. The supervisor orchestrated a transfer of Plaintiff to a harder job, out of Plaintiff's field and that was more physically demanding, on account of race.

65. Defendant's agents knew that back injury was foreseeable for cashiers when they assigned Plaintiff to the cashier's position.

### Claim II

66. Plaintiff incorporates each and every paragraph above as if stated herein.

67. Plaintiff engaged in protected activity when she complained about the racial harassment, or harassment she reasonably believed to be unlawful racial harassment.

68. Management confronted the supervisor, who stopped the harassment for a short time, but then, in January the supervisor began adverse treatment again, when the supervisor's superior was out of town.

69. Plaintiff was written up by the supervisor.

70. Plaintiff was denied work scheduling accommodations by the supervisor.

71. The supervisor caused Plaintiff to be transferred to the cashier's position on account of retaliation.

72. Defendant's agents knew that back injury was foreseeable for cashiers when they assigned Plaintiff to the cashier's position.

## Claim III

73. Plaintiff incorporates each and every paragraph above as if stated herein.

74. Defendant caused or allowed a severe or pervasive hostile work environment on account of race.

75. Defendant subjected Plaintiff to a hostile work environment that was severe of pervasive.

76. Costco did not take appropriate remedial action to the re-started harassment in the form of adverse action, or the pretextual discipline.

77. The treatment of Plaintiff was so severe that she developed a medical condition and was instructed to take time off for her health.

78. Defendant assigned Plaintiff to a cashier's position as part of the hostile treatment by the supervisor.

WHEREFORE**,** Plaintiff prays that this Court:

A)     Provide Plaintiff a trial by jury on all issues so triable;

B)     Award Plaintiff compensatory damages to compensate her for all injuries proximately resulting from the Defendant's actions, in an amount to be determined by the enlightened conscious of the jury, and such special damages as are shown at trial;

C)     Award Plaintiff punitive damages due to the intentional and deliberately indifferent nature of Defendant's conduct;

D)     Deem Plaintiff a prevailing party and award her attorneys' fees and expenses of litigation;

E)     Award Plaintiff pre-judgment and post-judgment interest;

F)     Award Plaintiff such other equitable or monetary relief as the Court deems just and proper, including but not limited to reinstatement, the removal of any misleading, discriminatory, or retaliatory job performance information.

PLAINTIFFHEREBY REQUESTS A TRIAL BY JURY.

Respectfully submitted, this 5th day of December, 2016.

/s/: John P. Batson
John P. Batson
Ga. Bar No. 042150
Attorney for Plaintiff

Prepared by:
John P. Batson
P.O. Box 3248
Augusta, GA 30914
Phone 706-737-4040
jpbatson@aol.com